1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROSEMERE NEIGHBORHOOD
ASSOCIATION, *et al.*,

       Plaintiffs,

    v.

CLARK COUNTY, *et al.*,

       Defendants.

Case No.  C11-5213RBL

ORDER GRANTING MOTION FOR
PRELIMINARY INJUNCTION AND
STAYING PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY
JUDGMENT

THIS MATTER comes before the Court on a motion for partial summary judgment and

injunctive relief filed by plaintiffs Rosemere Neighborhood Association, Columbia Riverkeeper,

and Northwest Environmental Defense Center (collectively, "plaintiffs") and on defendants'

cross motion for summary judgment.  Plaintiffs contend that defendants, which include Clark

County and four of its officials, are violating the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et

seq*, by continuing to operate under a permit modification that has been invalidated.  Defendants

counter that the modification is still in effect and that they are in compliance with the modified

permit.  Defendants cross moved for dismissal, arguing that the issues in this case are not

justiciable in light of a related appeal pending before the state Court of Appeals.

For the reasons set forth below, the Court denies defendants' motion for summary

judgment, grants plaintiffs' request for injunctive relief, orders additional briefing regarding an

appropriate bond, and stays ruling on plaintiffs' motion for partial summary judgment until after the state Court of Appeals has ruled on the pending appeal.

## I. FACTS

The facts in this matter are not in dispute.  The bulk of the facts set forth below are compiled from the Findings of Fact, Conclusions of Law, and Order issued by the Pollution Control Hearings Board for the State of Washington ("PCHB" or the "Board").  [Dkt. #22, Declaration of Janette Brimmer, Ex. A, the "PCHB Decision"].

Clark County (the "County") owns and operates a municipal separate storm sewer system that discharges stormwater runoff from areas throughout the county to navigable waters in the County.  Under the CWA, the County must operate the storm water system in compliance with a National Pollutant Discharge Elimination System "(NPDES") permit.  33 U.S.C. § 1342(p). Along with other large Washington local governments, Clark County is regulated as a "Phase I" municipal stormwater permittee.  *Id.*; *see also Waste Action Project v. Clark County*, 45 F. Supp. 2d 1049, 1051 (W.D. Wash. 1999).

In 2007, the Washington Department of Ecology ("Ecology") issued a Phase I Stormwater General Permit (the "Phase I Permit").[1]  Among other things, the Phase I Permit contains default flow control standards.  If certain conditions are met, a permittee can implement an alternative flow control standard.  In January 2009, Clark County adopted an ordinance with a flow duration standard but did not present it to Ecology for approval as an alternative program. [PCHB Decision at p. 4].

Ecology issued a Notice of Violation to Clark County alleging that its flow control policy "does not provide equal or similar protection of receiving waters and equal or similar levels of pollutant control, as compared to Appendix 1."  [PCHB Decision at p. 5].  In January 2010, Clark County and Ecology entered into Agreed Order No. 7273 to "establish the actions

---

[1] NPDES permits must be renewed no less than once every five years.  33 U.S.C. § 1342(b)(1)(B).  The Phase I Permit, issued in 2007, is due to be renewed in the usual course in 2012.

necessary to bring the County into compliance with Special Condition S5 of the Phase 1 Permit." [*Id.* at pp. 5-6]. "On September 1, 2010, Ecology modified the Phase I Permit to incorporate the substantive provisions of the Agreed Order into the permit." [*Id.* at p. 13]. Rosemere filed an appeal challenging the Agreed Order. The PCHB[2] conducted a multi-day hearing.

On January 5, 2011, the PCHB issued its decision and order, finding, among other things, that the "Agreed Order fails to provide equal or similar protection to receiving waters or equal or similar levels of pollutant control to that required by the Phase I Permit." [PCHB Decision at p. 7]. Shortly thereafter, the PCHB issued a stipulated final order, which stated,

> [T]he Board hereby finds that the permit modification is invalid for the same reasons identified in our earlier ruling on the Agreed Order, subject to the same concurrence and dissent. To the extent the permit modification included other provisions unrelated to Clark County's alternative flow control program, those provisions were not challenged by any party and this order does not affect them.
>
> Accordingly, for the reasons discussed in our Findings of Fact, Conclusions of Law and Order in PCHB No. 10-013, the permit modification that is the subject of this appeal is REVERSED AND REMANDED to Ecology for further actions consistent with that opinion and this Order.

[Brimmer Decl., Ex. B].

The County has appealed both rulings to Clark County Superior Court. The Board granted plaintiffs' motion for direct review in the Court of Appeals, which accepted direct review. In the interim, the County continues to implement its program consistent with the permit modification.

Plaintiffs have brought this citizen suit under the Clean Water Act to enforce the Phase I Permit. In addition to allowing citizen suits, the CWA provides for civil penalties, injunctive relief, and attorney's fees and costs. 33 U.S.C. § 1365(a). Plaintiffs are seeking summary judgment on their claims that the County is out of compliance with its permit obligations and prospective injunctive relief requiring the County to comply with the unmodified Phase I Permit.

---

[2] The PCHB is a "quasijudicial body" charged with "providing uniform and independent review of Ecology actions." *Port of Seattle v. Pollution Control Hearings Bd.*, 151 Wn.2d 568, 592, 90 P.3d 659 (2004).

**II.  DISCUSSION**

**A.     Defendants' Motion for Summary Judgment: Ripeness and Justicability.**

The County has filed a cross motion for summary judgment urging the Court to dismiss this case as premature, unripe, and not justiciable in light of the pending appeal.  It argues that there is no case or controversy before the Court because the claims are abstract and speculative.  *See, e.g.*, *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) (explaining that the doctrine of ripeness "is a means by which federal courts may dispose of matters that are premature for review because the plaintiff's purported injury is too speculative and may never occur.").  However, this case does not present a speculative injury.  Nor does it present an "abstract disagreement[] over administrative policies" or a philosophical disagreement about policy.  *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003).  Rather, plaintiffs argue that the County is *currently* failing to comply with its legal obligations to the detriment of the environment, a claim for which the CWA provides both a vehicle and a remedy.

Defendants also argue that the matter is not justiciable in light of the pending appeal of the Board's decision.  Although the concurrent proceeding raises issues of comity, as discussed below, it does not present a procedural hurdle that must be cleared prior to review by this court or otherwise undermine the justiciability of the citizen suit.  Accordingly, the Court denies defendants' motion for summary judgment.

**B.     Comity and a *Colorado River* Stay.**

Defendants argue that in light of the pending appeal before the Court of Appeals, this Court should abstain from considering plaintiffs' motion for partial summary judgment and for a preliminary injunction.  The Supreme Court has explained that a district court has discretion to decline to exercise its jurisdiction due to a pending parallel action in state court, but should do so only in "exceptional circumstances" because federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them."  *Colorado River Water Conservation*

*Dist. v. United States*, 424 U.S. 800, 817 (1976);[3] *see also Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983).  Under *Colorado River*, considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation" may justify the imposition of a stay.  424 U.S. at 817.  "'Exact parallelism'" is not required; "it is enough if the two proceedings are 'substantially similar.'" *Holder v.* Holder, 305 F.3d 854, 867 (9th Cir. 2002) (quoting *Nakash*, 882 F.2d at 1416).

Following *Colorado River* and *Moses Cone*, the Court considers the following factors to determine if a stay is appropriate:

> (1) whether either court has assumed jurisdiction over a *res*; (2) the relative convenience of the forums; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; and (6) whether the state proceeding is adequate to protect the parties' rights.

*See Nakash*, 882 F.2d at 1415 (citing *Colorado River*, 424 U.S. at 818 and *Moses Cone*, 460 U.S. at 25-26).

In urging the Court to decline to rule on the request for an injunction, defendants argue that the Court of Appeals is awarded "primacy" because it obtained jurisdiction first, but the Court of Appeals is solely reviewing the Board's decision.  [Dkt. #26, Defendants' Response at p. 20].  The Court of Appeals has never had, nor could it have, jurisdiction over this citizen suit. Rather, this Court has exclusive jurisdiction over plaintiffs' citizen suit to enforce the NPDES permit requirements.  33 U.S.C. § 1365(a).  Ninth Circuit law prohibits courts from invoking *Colorado River* to stay consideration of claims within their exclusive jurisdiction.  *See, e.g.*, *Minucci v. Agrama*, 868 F.2d 1113, 1115 (9th Cir. 1994).  Moreover, because the propriety of a CWA injunction is not before the Court of Appeals, this Court's consideration of one does not interfere with or interrupt the state court proceedings.  If plaintiffs are correct that defendants' actions are harming the environment, then the Court should not delay while the Court of Appeals considers the appeal.  For all of those reasons, the Court will not stay or abstain from deciding

---

[3] Although *Colorado River* might justify a stay, it is technically not an abstention doctrine.  *See, e.g.*, *Nakash v. Marciano*, 882 F.2d 1411, 1415 n.5 (9th Cir. 1989).

1   plaintiffs' request for an injunction.

2       Although the Court cannot stay consideration of the request for an injunction, *Colorado*

3   *River* permits the issuance of a partial stay of claims over which this Court and the Court of

4   Appeals have concurrent jurisdiction.  *See, e.g.*, *In re Countrywide Fin. Corp. Derivative Litig.*,

5   542 F. Supp. 2d 1160, 1172 (C.D. Cal. 2008).  Although the issues are framed differently before

6   each court, the courts have concurrent jurisdiction over the continued viability of the permit

7   modification.  Applying the *Colorado River* factors, neither court has assumed jurisdiction over

8   a *res*, and the forums are equally convenient.  The Court of Appeals obtained jurisdiction first,

9   and courts prefer to avoid piecemeal litigation.  Furthermore, although the actions are not

10  identical, they are parallel.  Plaintiffs allege that the County's liability is based on three

11  violations: (1) "Clark County's failure to implement the required flow control standard is a

12  continuing violation of the Permit on its face;" (2) the County "has no viable, approved

13  alternative to the Permit's flow control standard that provides equivalent protection, which in

14  itself is a Permit violation;" and (3) the County, "by failing to implement the required or

15  equivalent flow control, is in violation of the Permit requirement to reduce pollutants to the

16  maximum extent practicable."  [Dkt. #16, Plaintiffs' Motion at p. 9].  As plaintiffs concede, "a

17  key question in this enforcement action is the validity of the attempted amendment to the Phase I

18  Permit," which the Court of Appeals will resolve on appeal.  [Dkt. #30, Plaintiffs' Reply at p. 9].

19  If the Court of Appeals overturns the Board's decision, finds that the Agreed Order is valid, and

20  finds that the County has been in compliance with the Phase I Permit, then plaintiffs' arguments

21  for liability and damages before this Court would be moot.  For that reason, staying

22  consideration of the underlying merits would conserve judicial resources.  It would also promote

23  comity because state law controls the review of the Board's decision.  If the Court of Appeals

24  upholds the validity of the Agreed Order, there would be nothing left for this Court to do and no

25  basis for it to award relief to plaintiffs.  *See, e.g.*, *Holder*, 305 F.3d at 868.  Balancing the factors,

26  the Court determines that a partial stay is warranted and stays consideration of plaintiffs' request

27  for partial summary judgment regarding liability.

28                                                    ORDER - 6

1      **C.      Injunctive Relief.**

2            Having declined to stay consideration of plaintiffs' request for an injunction, the Court

3      considers whether one is warranted.  The Supreme Court has explained, "A plaintiff seeking a

4      preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to

5      suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his

6      favor, and that an injunction is in the public interest."  *Winter v. Natural Res. Def. Council, Inc.*,

7      555 U.S. 7, 20 (2008).  Following *Winter*, the Ninth Circuit has explained that a party can

8      establish the first element by raising "serious questions" going to the merits of the case.  *Alliance*

9      *for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

10           The Court has broad authority "to order relief it considers necessary to secure prompt

11     compliance with the Act."  *Weinberger v. Romero-Barcelo*, 456 US 305, 320 (1982).  In this

12     case, plaintiffs seek an injunction that would require the County to apply the Phase I Permit

13     standards to all new development going forward.  However, the Court will not apply such a

14     broad injunction because the PCHB did not invalidate the modification in its entirety.  Although

15     the Board invalidated the modification regarding the alternative flow control program, it

16     explicitly did not address any other provisions of the modification.  [PCHB Final Order at p. 2

17     ("To the extent the permit modification included other provisions unrelated to Clark County's

18     alternative flow control program, those provisions were not challenged by any party and this

19     order does not affect them.")].  It is unclear whether the modification affected other provisions,

20     but the Court will address only the alternative flow control program, consistent with the PCHB's

21     decision and the principle that injunctions should be narrowly drawn.

22           In evaluating the merits regarding an injunction, the parties' filings demonstrate that a

23     specific and narrow issue controls: whether the County's flow control program is governed by

24     the standards in the Phase I Permit or the modification to that permit.  The Board has ruled

25     decisively that the portion of the modification regarding the alternative flow control standard is

26     "invalid."  [Brimmer Decl, Ex. B, Final Order at p. 2].  The Board's determination is entitled to

27     preclusive effect even though the decision is being appealed.  *See, e.g.*, *Dias v. Elique*, 436 F.2d

28                                                    ORDER - 7

1125, 1128 (9th Cir. 2009) (explaining that federal courts give the same preclusive effect to state

administrative decisions as the relevant state gives); *Shoemaker v. City of Bremerton,* 109 Wn.2d

504, 505, 745 P.2d 858 (1987) (explaining that in Washington, administrative decisions are

given the same preclusive effect as final court decisions); *Lejeune v. Challam County*, 64 Wn.

App. 257, 265, 823 P.2d 1144 (1992) (an appeal does not suspend the *res judicata* effect of an

administrative decision).  The Board has not stayed its decision pending the appeal, nor is the

ruling automatically stayed.

Defendants characterize the Board's ruling as simply reversing the Agreed Order and

remanding the matter back to Ecology for further action.  Although the Board remanded the

matter "for further action consistent" with its order, the Board explicitly stated that the Agreed

order was "unlawful" and that the alternative flow control portion of the modification was

"invalid."  [Brimmer Decl., Ex. B, Final Order at pp. 1-2; PCHB Decision at p. 48 (noting the

Agreed Order's "invalidity")].  Defendants' contention that that portion of the modification has

continued validity is inconsistent with the plain language of the Board's decision.

Defendants argue that the Board is not authorized to issue or modify a permit, but the

Board did not purport to do either.  Rather, its ruling was narrow: it invalidated a portion of the

modification, which it was authorized to do.  RCW 43.21B.300; WAC 371-08-485(1); *Port of

Seattle v. PCHB*, 151 Wn. 2d at 593.  In a subsequent public statement on its website, Ecology

noted that the PCHB had found that the Agreed Order was "unlawful," and stated, "As a

consequence, Clark County's Flow Control Mitigation Program is no longer equivalent or

applicable."  [Brimmer Decl., Ex. E].  Ecology's statement undermines defendants' argument

that the alternate flow control modification continues in effect until further action by Ecology.

Defendants also note that a state regulation requires that when the Board "determines that

the department issued a permit that is invalid in any respect, the board shall order the department

1    to reissue the permit as directed by the board." WAC 371-08-540(2).[4]  In this case, however,

2    there was no need for Ecology to reissue the Phase I Permit because it was continually in effect.

3    Ecology has never revoked the Phase I Permit or stated that it is inapplicable to the County.  To

4    the contrary, in the Agreed Order, the parties acknowledged, "The purpose of this Agreed Order

5    is to establish the actions necessary to bring the County into compliance with Special Condition

6    S5 of the" Phase I Permit.  [Dkt. #27, Declaration of Christine Cook, Ex. B at p. 1].  The Agreed

7    Order goes on to state, "Nothing in this Agreed Order shall in any way relieve the County of its

8    obligations under the Permit."  [*Id*; *see also id.* at p. 3 (outlining steps the County agreed to take

9    "to achieve compliance with the terms of the Permit")].  In fact, the Phase I Permit allows

10   permittees to propose alternative, but equivalent, methods for meeting the flow control

11   standards.  *Id.*  Throughout its decision, the Board noted that the modification was intended to

12   provide such an alternative means pursuant to the Phase I Permit.  [PCHB Decision at p. 4; Dkt.

13   #34, Declaration of Ronald Wierenga, Ex. C (Ecology modified Appendix 10 to include Clark

14   County's flow control program as "equivalent" to the standards in the Phase I Permit)].  The

15   Board applied the standards in the Phase I Permit to determine whether the standards in the

16   modification were equivalent as required by the permit.  [PCHB Decision at p. 7 (explaining that

17   Condition S5 of the Phase I Permit required that any local alternative flow control standards

18   "'shall provide equal or similar protection of receiving waters and equal or similar levels of

19   pollutant control' relative to the default standard") (quoting the Phase I Permit)].  Based on that

20   language and the parties' agreement, it is clear that the Phase I Permit standards continue in

21   effect and were never wholly supplanted by the modification.  Therefore, despite defendants'

22   contention to the contrary, there was no need for the Board or Ecology to "reinstate" or reissue

23   the Phase I Permit.  For all of those reasons, the Court concludes that plaintiffs have shown that

24   they are likely to succeed on the merits of their claim that the County is subject to the flow

25   _____

26        [4] Even if defendants are correct that Ecology was required to reissue the Phase I Permit,
     that requirement would not mean that the explicitly invalidated modification continued in effect.
27   Nor would the agency's inaction bar a citizen suit.  33 U.S.C. §§ 1365(a), (f), and 1311(a).

28                                    ORDER - 9

control requirements in the unmodified Phase I Permit.

The likelihood of irreparable harm also strongly favors an injunction.  In its comments to the proposed modification, the National Marine Fisheries Service opined that the Agreed Order would have "more than minor detrimental effects" to threatened salmon, and "strongly encourage[d]" EPA to exercise its regulatory authority to formally object.  [Brimmer Decl., Ex. J].  The Board, whose findings are entitled to deference, found that the Agreed Order's plan failed to protect the beneficial uses of the County's waters: "'The Clark County standard is plainly insufficient to protect beneficial uses like salmon and other aquatic life, and healthy aquatic conditions generally.'"  [PCHB Decision at p. 24 (quoting testimony)].  The Board also noted that several area salmon and steelhead populations are listed as threatened or endangered, the County is one of the fastest growing counties in the state, and that potential impacts of fish and other aquatic life "from stormwater can be significant."  [*Id.* at p. 23].  The Board concluded "that the alternative approach of the Agreed Order will not provide similar or equal protection to receiving waters.  Significant amounts of unrebutted expert testimony are in the record that the ecological impacts of Clark County's alternative flow control mitigation program are not only ignored, but that the potential impacts can be substantial."  [*Id.* at p. 51].  Although the County stresses that it is complying with every other aspect of the Phase I Permit, the Board found that the flow control standard was "integral."  [*Id.* at p. 46].  One of the experts testified, "The Clark County flow control standard allows continuing degradation of streams from existing degraded runoff conditions from a site.  This flow control standard allows salmon and steelhead to continue to be harmed and killed by stormwater runoff and continued degradation to their habitats."  [Brimmer Decl., Ex. L, Rhodes Testimony at p. 13].  Mr. Rhodes also testified that the plan in the Agreed Order "will not prevent harm to salmon and steelhead and increases the likelihood that these fish will be killed and/or that there will be continuing loss of populations." *Id.* at p. 14.  Once the damage occurs, it is exceedingly difficult to remedy.  [*Id.* at p. 18; *see also id.* at p. 17 (explaining that "dead or injured salmon cannot be replaced with 'mitigation' of flows later.  They are simply lost.")].  That testimony, relied on by the Board, is consistent with

1    case law holding that "environmental injury, by its nature, can seldom be adequately remedied

2    by money damages and is often permanent or at least of long duration, *i.e.*, irreparable." *Amoco*

3    *Prod. Co. v. Village of Gambell*, 480 U.S. 531, 545 (1987).  Defendants argue that plaintiffs

4    have not demonstrated that harm is certain to occur, but plaintiffs are not required to do so.

5    Instead, they must show that environmental injury is "sufficiently likely," which they have done.

6    *Id.*  Accordingly, plaintiffs have shown a likelihood of irreparable harm absent an injunction.

7         Plaintiffs have also shown that the balance of harms tips in their favor.  Defendants argue

8    that they have taken costly steps to comply with their obligations.  However commendable those

9    efforts might be, they do not alleviate defendants' duty to comply with the terms of the permit.

10   *See, e.g.*, *Public Interest Research Group v. Yates Indus., Inc.*, 757 F. Supp. 438, 456 (D.N.J.

11   1991).  The Supreme Court has noted that if an environmental injury is sufficiently likely, "the

12   balance of harms will usually favor the issuance of an injunction to protect the environment."

13   *Amoco Prod. Co.*, 480 U.S. at 545.  While the potential damage to the environment is

14   significant, defendants' response to the motion contained nothing more than speculation

15   regarding the potential harm to the County and the public.  Instead, they identified some

16   specifics for the first time in their reply, but the Court does not consider arguments raised for the

17   first time in a reply memorandum.  Even if the Court were to consider the belated arguments,

18   they would not assist defendants.  Defendants contend that they have spent a significant amount

19   of money complying with the Phase I Permit, which is irrelevant.  In a similar vein, they note

20   that the County "has spent approximately $3.7 million on planning and constructing capital

21   projects for stormwater flow control and restoration program [sic] under the Agreed Order and

22   Permit Modification."  [Dkt. #33, Defendants Reply at p. 13].  The spreadsheet they cite in

23   support, though largely unexplained, appears to show that the bulk of that money was spent

24   before the County and Ecology entered into the Agreed Order rather than pursuant to the order.

25   [Wierenga Decl, Exs. A, B].  Although defendants imply that those funds would be wasted if

26   they were required to comply with the Phase I Permit, they cite no evidence in support.

27   Specifically, it is unclear whether at least some of the funds were spent in furtherance of the

28

1   County's obligations under the Phase I Permit.  Because an injunction would only apply

2   prospectively, the completed projects would not need to be redone.  Defendants also argue,

3   "Property owners and developers in Clark County who have obtained permits and approvals

4   pursuant to Clark County's stormwater code would also be harmed by an injunction."

5   [Defendants' Reply at p. 14].  However, the injunction plaintiffs seek would apply prospectively

6   and would not affect existing permits.  Moreover, if the Board's decision is upheld, applicants

7   will have to comply with the standards in the Phase I Permit regardless of whether an injunction

8   is issued.  Defendants have offered no specific evidence regarding how the injunction plaintiffs

9   propose, which is narrow and of short duration, would harm property owners and developers in

10  the County.

11          In addition, more than 100 cities and counties in Western Washington are subject to the

12  Phase I Permit's default flow control standard and are apparently able to comply with its

13  requirements.  In fact, the County is undisputedly subject to all of the other requirements in the

14  Phase I Permit; the only dispute concerns "flow control and methodology set forth in S.5.C.5 of

15  the unmodified permit."  [Defendants' Response at p. 16].  Therefore, the balance of harms tips

16  in plaintiffs' favor.

17          It is in the public's interest to protect the environment and enjoin the issuance of

18  approvals and building permits for projects under what the Board has found to be inadequate

19  standards.  The public interest favors compliance with environmental laws.  *See, e.g.*, *Fund for*

20  *Animals, Inc. v. Epsy*, 814 F. Supp. 142, 152 (D.D.C. 1993).  The CWA "requires strict

21  enforcement . . . to effectuate its purpose of protecting sensitive aquatic environments."  *United*

22  *States v. Akers*, 785 F.2d 814, 823 (9th Cir. 1986).  Therefore, plaintiffs have shown that an

23  injunction is in the public's interest.

24          In sum, plaintiffs have shown that they are entitled to an injunction to require defendants

25  to comply with the Phase I Permit's flow control requirement, condition S.5.C.5, for any

26  development project permitted on or after the date of this Court's order.

27          Under Federal Rule of Civil Procedure 65, a court may issue a preliminary injunction

28

1   "only if the movant gives security in an amount that the court considers proper to pay the costs

2   and damages sustained by any party found to have been wrongfully enjoined or restrained."

3   Fed. R. Civ. P. 65(c). Because the parties did not address that requirement in their filings, the

4   Court now orders them to do so. Within ten days of the date of this order, defendants must

5   propose an appropriate bond. Plaintiffs may file a response to the request within ten days of

6   receiving it. No further briefing on the matter will be accepted.

7                                   **III.  CONCLUSION**

8          For all of the foregoing reasons, the Court STAYS plaintiffs' request for partial summary

9   judgment and GRANTS plaintiffs' motion for an injunction. [Dkt. #16]. The Court DENIES

10  defendants' motion for summary judgment. [Dkt. #32].

11         Pending further order of the Court, defendants are hereby enjoined from issuing any

12  permit or authorization that fails to meet condition S.5.C.5 of the Phase I Permit. The parties are

13  further ordered to notify the Court, by submission of a joint status report, within fifteen days

14  after the Court of Appeals issues its decision regarding the appeal.

15

16  **IT IS SO ORDERED.**

17         Dated this 28th day of December, 2011.

18

19

20                                    RONALD B. LEIGHTON
                                      UNITED STATES DISTRICT JUDGE
21

22

23

24

25

26

27

28                                         ORDER - 13